**UNITED STATES of America,**
**Appellee,**

**v.**

**David LEIBOWITZ, Appellant.**

**No. 291, Docket 33203.**

United States Court of Appeals
Second Circuit.

Argued Nov. 7, 1969.

Decided Dec. 19, 1969.

---

**40**

John J. Mooney, McLaughlin & McLaughlin, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, on the brief), for appellee.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge:**

Appellant appeals his conviction on two counts of violating 50 U.S.C. App. § 462(a) [the Selective Service Act of 1967]. He was fined $5,000 on each count after jury trial in the United States District Court for the Eastern District of New York, John T. Curtin, *Judge*. Count one of the indictment charged the appellant with aiding and abetting another (his son), who was a Selective Service registrant, to evade service in the Armed Forces of the United States. The second count charged appellant with being a party to the making of a false statement bearing upon his son's Selective Service classification for service in the Armed Forces of the United States. Both of the offenses set forth in the indictment upon which the appellant was convicted are among the ten disjunctive offenses established by Congress in 50 U.S.C. App. § 462(a); each offense is punishable by a penalty of up to five years and/or a fine up to $10,000. We find no error and affirm the conviction on both counts.

Appellant's son was classified 2–S (student deferment) in October, 1963, which classification was effective until the end of the school year in June, 1964. In April, 1964, one Paul Miller received a phone call, and the caller arranged a meeting between Miller and appellant; the meeting took place that month. During the meeting appellant told Miller that he wished to keep his son from going into the Armed Forces and Miller told appellant he could do so by submitting false information to appellant's son's draft board. The form to be submitted, Miller informed appellant, was a DD–44 form which would contain appellant's son's name, address, date of birth, Selective Service number, Selective Service board number and the false information that appellant's son was serving satisfactorily in an active Reserve Unit. Miller gave assurances that upon receipt of the DD–44 form, the local board would re-classify appellant's son I–D and would consider him to be in the active reserves. Appellant agreed to this and

to pay Miller $3,500 for his services. Appellant gave Miller a cash down payment and handed several of his son's Selective Service cards to Miller so that Miller could copy the necessary data onto a page of his black notebook; Miller was also given appellant's telephone number, which Miller entered in his book.

Subsequent events resulted in the classification for appellant's son that Miller had promised. Miller contacted Solomon Gottfried, his accomplice, and gave him the information and $200 for his services. Gottfried made out the false DD-44 from the information appellant had supplied, and added that appellant's son was performing satisfactory active reserve duty with the 514th Troop Carrier Wing at McGuire Air Force Base. The form bore the fictitious name of Captain James F. Medina, and Gottfried mailed it to appellant's son's local board. In May, 1964, on the basis of the false DD-44 submitted, the board reclassified appellant's son I-D, and such classification was mailed to appellant's son. Miller contacted appellant later in May by telephone and asked appellant if his son had been reclassified by the draft board. When informed that such was the case, Miller arranged a meeting with appellant and collected the balance due on the $3,500 fee. A I-D registrant cannot be drafted. Although appellant testified in his own defense and denied ever knowing or meeting Miller, the jury resolved the issue of credibility against appellant by its verdict.

Appellant's principal contention is that the government presented only hearsay evidence before the grand jury although its witnesses were readily available and that in doing so the government completely disregarded our admonition in United States v. Umans, 368 F.2d 725 (2d Cir. 1966), cert. granted 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, cert. dismissed as improvidently

granted 389 U.S. 80, 88 S.Ct. 253, 19 L. Ed.2d 255. None of the government witnesses at trial appeared before the grand jury[1] although both Miller and Gottfried were available at the time in the New York City area. The testimony before the grand jury was that of FBI Agent George G. McKenna who testified that he had conducted the investigation of this case and had examined the local board's records showing appellant's son had been given a I-D classification after the board had received a DD-44 form. The form stated that appellant's son was enlisted in the Air Force Reserve and was serving satisfactorily; Agent McKenna also testified that he had examined the records at McGuire Air Force Base which disclosed that appellant's son was not and never had been a member of the unit and that he was unknown there. Agent McKenna further testified to the grand jury that when Miller, the principal government witness was arrested, a black notebook was seized from him and one of the entries in the book was the name, address and Selective Service number of appellant's son. To explain the meaning of this entry, the agent read Miller's written statement in which Miller told of the deal between himself and appellant.

Despite appellant's arguments to the contrary, we did not in United States v. Umans, *supra*, attempt to change the basic premise concerning grand jury indictments based upon hearsay evidence as established by Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). In *Costello*, the Court stated that since neither the Fifth Amendment nor any other constitutional provision prescribed the kind of evidence upon which a grand jury must act, the defendants could not challenge their indictments on the ground that they were not supported by adequate or competent evidence but solely by hearsay. In *Umans* we admonished prosecu-

---

1. The testimony of Miller before the grand jury would have been sufficient to present that jury with enough facts upon which to return an indictment. Gottfried had no dealings with the appellant so that his testimony before the grand jury would have only been corroborative of Miller's testimony, as it was at appellant's trial.

tors regarding the over-use of hearsay evidence in the presentation of government cases to grand juries, but we have consistently upheld indictments based upon hearsay evidence. See, e. g., United States v. Andrews, 381 F.2d 377 (2d Cir. 1967), cert. denied 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968); United States v. Beltram, 388 F.2d 449 (2d Cir. 1968), cert. denied sub nom. Colon v. United States, 391 U.S. 955, 88 S.Ct. 1860, 20 L.Ed.2d 869 (1968); United States v. Covello, 410 F.2d 536 (2d Cir. 1969); United States v. Mayersohn, 413 F.2d 641, 643 (2d Cir. 1969). As we noted in United States v. Payton, 363 F.2d 996 (2d Cir. 1966), cert. denied 385 U.S. 993, 87 S.Ct. 606, 17 L.Ed.2d 453 (1966), even though the use of hearsay before the grand jury deprives a defendant of the opportunity to impeach witnesses at trial with prior inconsistent statements made to the grand jury, a defendant cannot require prior statements to the grand jury by government witnesses simply to create inconsistent stories at trial which can be shown to the trial jury.[2]

■ Indictments obtained principally or wholly upon the basis of hearsay evidence, even though direct testimony was available, will not be dismissed unless it appears that dismissal is required to protect the integrity of the judicial process. If the grand jury is misled into thinking it is getting eye-witness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed [see Judge Friendly's dissent in *Payton, supra*], dismissal may be considered. Likewise, dismissal may be considered if the defendant could show that there is a high probability that with eye-witness

rather than hearsay testimony the grand jury would not have indicted. Neither of these considerations is present here. Although not all of the testimony against appellant before the grand jury was hearsay,[3] the reading of Miller's written statement by Agent McKenna was; this is the testimony that linked appellant with the fraudulent statement filed with his son's draft board. However, the grand jury realized that Agent McKenna was reading Miller's written statement and not giving testimony as to what he had personally observed. There was no misleading of the grand jury here. Moreover, there was no purpose to mislead. This was one of many cases in which Miller's activities were an essential part of the scheme. When the first cases were presented to grand juries, Miller was himself a prospective defendant and was therefore not called before the grand jury. This practice was continued in later cases when Miller could conceivably have been called. We can discern no significant probability that the grand jury would not have indicted appellant with Miller's testimony rather than the hearsay testimony. The indictment was properly upheld.

■ Appellant contends that the counts of the indictment were multiplicitous; we do not agree. The rule in this area has been stated as follows:

"* * * The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. * * *" Blockburger v. United

---

2. Nor was appellant significantly prejudiced by the unavailability of grand jury testimony for impeachment of Miller and Gottfried; the defense was given the written statement of Miller and at trial was provided with Gottfried's section 3500 statement. Appellant also had an opportunity to cross-examine Miller and to make use of the written statement in the event of an inconsistency; this statement

was the testimony heard by the grand jury, and it is sufficient that appellant had a written version of Miller's statement available at trial for impeachment purposes.

3. Agent McKenna testified as to his personal investigation of the local board's records and the records at McGuire Air Force Base.

States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, (1932).

The Court has emphasized that it is the *violation,* as distinguished from the direct evidence offered to prove that violation, which must be different. Harris v. United States, 359 U.S. 19, 23–24, 79 S. Ct. 560, 3 L.Ed.2d 597 (1959). Although the false statement which was filed with appellant's son's local board was direct evidence of both violations, there are two separate offenses involved here. Appellant committed one of the substantive offenses set forth in 50 U.S.C. App. § 462(a) when he was a party to the making of a false statement regarding and bearing upon a classification for military service. The violation occurred with the submission of the false DD–44 form; no action was required by the local board based upon the form (count two). Another, broader, substantive offense in section 462(a) occurs when one " * * * knowingly counsels, aids, or abets another to refuse or evade registration of service in the armed forces * * *." "Aiding" and "abetting" includes appellant's conduct here, where he assisted in obtaining an improper classification for the son. In a prosecution for aiding and abetting another to refuse or evade registration, the government had to show the fact of evasion; i. e. a step toward avoidance of the service obligation, as in this case where the local board relied on the false statement and changed appellant's son's classification. But cf. Warren v. United States, 177 F.2d 596, 598 (10 Cir. 1949), cert. denied 338 U.S. 947, 70 S.Ct. 485, 94 L. Ed. 584. Since the charge of aiding and abetting was a broader allegation and an additional element had to be proven by the government beyond submission of the false statement, the two separate charges were justified. Harris v. United States, *supra.*

Appellant further contends that he could not be convicted of "aiding and abetting" his son to evade service (count one) where there was no proof that his son, the named individual ("another") in the indictment, was a principal. However, this is not the general aiding and abetting statute, 18 U.S.C. § 2. Under 50 U.S.C. App. § 462(a), "aiding and abetting another" is a distinct substantive offense, and there is no need for proof that there was a criminal principal. Whether or not appellant's son is guilty of the crime of evading service is irrelevant to appellant's conviction on the "aiding and abetting" count. It must only be proven that appellant aided and abetted somebody other than himself and that this resulted in the false classification, and the other's participation is irrelevant.

Judgment affirmed.