**UNITED STATES of America**

v.

**Dominic P. GALLO and Carmen Ricca.**

**Crim. No. B 74–13.**

United States District Court,
D. Connecticut.

May 30, 1975.

Paul E. Coffey, Sp. Atty., U. S. Justice Dept., Hartford, Conn., for plaintiff.

Elaine S. Amendola, Zeldes, Needle & Cooper, Bridgeport, Conn., for defendant Gallo.

J. Daniel Sagarin, Schless & Sagarin, Bridgeport, Conn., for defendant Ricca.

## RULING ON DEFENDANTS' MOTION TO DISMISS

ZAMPANO, District Judge.

This motion to dismiss challenges the questionable procedures employed by the government's attorney to secure a second indictment against the defendants. The prosecutor obtained the present indictment by submitting to the grand jury written transcripts of a witness's testimony before a prior grand jury, and by informing the second grand jury that he was seeking to make mere technical corrections in the first charge.

### I.

The facts are not in dispute. On November 28, 1972, Jerome Buckley, the chief government witness in this case, appeared before a grand jury in Hartford, described his role in an illegal gambling business, and testified as to the participation of the defendants in the business. In one portion of his testimony, Buckley described a gathering in Easton, Connecticut, where the various members of the gambling syndicate including defendant Gallo met to centralize its operations after the death of a key figure. On June 13, 1973, Buckley appeared before the same grand jury and admitted that he had fabricated the story of the Easton meeting. Buckley explained that there had been friction between Gallo and himself and that he had cooperated with federal authorities to insure Gallo's indictment. After confessing his perjury, Buckley reaffirmed the rest of his testimony concerning Gallo's involvement in a "policy playing" racket. On the basis of Buckley's testimony, the identification of certain gambling records, and the testimony of a police officer who performed surveillance of the gambling operations in 1972, the grand jury returned an indictment against the defendants, in Criminal No. B-96, filed on June 14, 1973.

The defendants attacked the indictment in Criminal No. B-96 in a lengthy motion to dismiss. Subsequently, the government concluded that there were several errors in the initial true bill. Not only did the indictment charge that the defendants' activities in violation of 18 U.S.C. § 1955 commenced before the effective date of that statute, but also the Connecticut state statute allegedy violated was cited mistakenly. The government therefore dismissed the charges in Criminal No. B-96 after obtaining the present indictment in Criminal No. B-74-13. This true bill corrects the aforementioned errors and charges the defendants with owning and conducting in concert with others an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2.

It is the manner in which the government attorney, Mr. Paul Coffey, procured the instant indictment which gives rise to the defendants' present claim. On February 27, 1974, having decided to seek a new indictment against defendants, Mr. Coffey convened a grand jury in Hartford. This grand jury was composed of individuals entirely different from the panel which returned the indictment in Criminal No. B-96, because the term of the previous grand jury had expired. When Mr. Coffey appeared before this new grand jury, he stated at the outset that he was seeking an indictment of the defendants and that he was supplying the grand jury with transcripts of the testimony of "Gerald" Buckley before a previous grand jury on November 28, 1972, and on June 13, 1973. This testimony, the prosecutor said, had resulted in a prior indictment of the defendants by the preceding grand jury. He then explained that the proposed indictment he was submitting to the jurors was a "superseding indictment" which changed the first true bill in two ways. First, the new indictment changed the initial date when the gambling business was alleged to have operated, "to avoid . . . charging the Defendants with an offense which was not a criminal offense." Second, the new indictment changed the citation of the state law being violated to "[t]he

technically correct citation." In concluding his brief remarks, the government attorney stated that the probable cause upon which the previous grand jury had returned the prior charges consisted of Buckley's testimony as well as the identification of certain gambling records and the testimony of a police officer who had performed surveillance of the policy operation. Mr. Coffey then departed, leaving for the consideration of the grand jury the "superseding indictment" and the transcripts of Mr. Buckley's testimony. The grand jurors deliberated briefly [1] and returned the instant indictment. The full text of Mr. Coffey's remarks is set forth in the margin.[2]

## II.

The defendants contend, *inter alia,* that the manner in which this indictment was secured violated the Second Circuit's principles relating to the excessive use of hearsay testimony in grand jury proceedings. United States v. Estepa, 471 F.2d 1132 (2 Cir. 1972); United States v. Leibowitz, 420 F.2d 39 (2 Cir. 1969); United States v. Arcuri, 405 F.2d 691 (2 Cir. 1968); and United States v. Umans, 368 F.2d 725 (2 Cir. 1966).

At the outset, it is appropriate to emphasize that "[w]hen the framers of the Bill of Rights directed in the Fifth Amendment that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,' they were not engaging in a mere verbal exercise." United States v. Estepa, supra at 1136. Accordingly, courts must be ever vigilant to preserve the functions of the grand jury as an effec-

1. According to the Grand Jury list and, Clerk's Notes, Defendants' Reply to Supplemental Memorandum of Government, App. A, the grand jurors reported at 10:00 A.M. on February 27, 1974, and they returned the indictment at 11:47 A.M.

2. MR. COFFEY: At this time, I would like to give to the Jury a proposed indictment, United States versus Dominic Gallo and Carmen Ricca, and as the basis of this indictment, I give to the Grand Jury Exhibit number 1 and Exhibit number 2 which are the testimony of one Gerald Buckley, the dates of which are November 28, 1972, and June 13, 1973, which resulted in a Grand Jury indictment, the Grand Jury which preceded you, of these two individuals for violation of Section 1955 and Section 2 of Title 18 of the United States Code, which is essentially the syndicated gambling statute and which provides when five or more individuals conduct, manage, supervise, direct all or a part of a gambling business involving five people and which is in violation of Connecticut State law and which has gross revenue in any one day of $2,000 or has a consistently continuous business in excess of thirty days, that is, in fact, a Federal violation.

At this time, the indictment which I give to you is a superseding indictment which changes the original indictment in this way: The indictment charged that the gambling business conducted by Mr. Gallo and Mr. Ricca and several other individuals was conducted from January 1, 1970, until December 15, 1972. The new indictment charges the gambling business was conducted from October 16, 1970, until on or about December 15th.

The change is from January 1st, the initial date of the business, to October 16th, the new initial date of the business. The reason for this change is that Section 1955 of Title 18 was passed by Congress and became effective October 15, 1970.

To avoid, therefore, charging the Defendants with an offense which was not a criminal offense prior to October 15th, the initial date is being changed.

In addition, the original indictment charged that the State law being violated by these individuals by conducting a gambling operation was Connecticut General Statute Section 15 and Connecticut General Act Section 865. The technically correct citation is Connecticut General Statute Title 15 as opposed to Section 15, and Connecticut Public Act 865, as opposed to Connecticut General Act 865. Those are the changes in the indictment.

The probable cause upon which the original Grand Jury returned the indictment was Mr. Buckley's testimony in substantial part as well as the identification of some gambling records, and the testimony of a police officer who did surveillance in 1972.

At this time, I will leave for your consideration the superseding indictment and the testimony of Mr. Buckley.

(Whereupon, the Matter was concluded.)

tive "safeguard against oppressive actions of the prosecutor . . . ." Gaither v. United States, 134 U.S.App. D.C. 154, 413 F.2d 1061, 1066 (1969), quoting from United States v. Cox, 342 F.2d 167, 170 (5 Cir. 1965).

■■ The Supreme Court has pointed out on several occasions that one purpose of the requirement that an individual be indicted by a grand jury is to place between the prosecutor and the accused an independent body, which can evaluate the evidence and determine if the charge is based upon reason. Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); Stirone v. United States, 361 U.S. 212, 218, 80 S. Ct. 270, 4 L.Ed.2d 252 (1960); Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). The accused has a right "to have the grand jury make the charge on its own judgment." Stirone v. United States, supra at 219, 80 S.Ct. at 274. Neither by depriving the grand jury of its opportunity to evaluate the credibility of witnesses nor by making prejudicial remarks to sway the grand jury may the prosecutor deny the accused this substantial right. As we stress in our instructions to grand juries routinely given in the District of Connecticut:

> Remember always your task is to stand as a bulwark between prosecutor and citizen. You have the protection and liberty of the members of this State in your charge. You are to see to it that the innocent are not to undergo public trial, unless you are satisfied from the evidence that there is probable cause to believe the accused committed the crime charged. The oath you have taken indicates the impartial spirit with which your duty shall be performed . . . . One of the most important functions you are to perform is to judge the credibility of the various witnesses who may appear before you. You and you alone are the judges of the credibility of those witnesses, that is, the believability of their statements to you. In reaching your conclusions as to the credibility of any witness you may consider . . . the demeanor of the witness, the witness' manner of testifying, the reasonableness or probability of the witness' story as it is related to you, whether a witness has been corroborated by other witnesses, evidence, or circumstances in the case . . . .

The Court of Appeals for this Circuit has expressed particular concern that an indicting grand jury not become a "rubber stamp" endorsing the wishes of a prosecutor as a result of the needless presentation of hearsay testimony in grand jury proceedings. In a series of cases culminating in United States v. Estepa, supra, the Second Circuit has "condemned the casual attitude with respect to the presentation of evidence to a grand jury manifested by the decision of the Assistant United States Attorney to rely on [hearsay] testimony . . . ." *Id.* at 1135. Criticism has been leveled not only at any government practice which may have misled the grand jurors into thinking that the hearsay testimony they were hearing was an eyewitness account, United States v. Leibowitz, supra at 42, but also at any conduct of the prosecutor in the presentation of hearsay evidence that does not make clear to the jurors "the shoddy merchandise they are getting so they can seek something better if they wish." United States v. Payton, 363 F. 2d 996, 1000 (2 Cir.) (Friendly, J. dissenting), cert. denied, 385 U.S. 993 (1966). It was specifically mandated in United States v. Umans, supra at 730, that "[h]earsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge." See also United States v. Leibowitz, supra at 42; United States v. Catino, 403 F.2d 491, 496 (2 Cir. 1968).

Disturbed at the apparent disregard of its warnings to prosecutors in this Circuit concerning the widespread use of hearsay evidence before grand juries,

the Court of Appeals felt compelled in *Estepa* to reverse the judgments of conviction because in the proper exercise of its judicial duties, it could not content itself with "yet another admonition." United States v. Estepa, supra at 1137.

### III.

Applying these general principles to the facts of the instant case, it is evident to the Court that a dismissal of the indictment is required for several reasons.

 First, there was an affirmative duty on the part of the prosecutor under the circumstances here to enlighten the grand jurors as to the hearsay quality of the evidence they were receiving. The prosecutor should also have informed the jurors that Mr. Buckley was available for live testimony in the event they wished to evaluate his credibility for themselves and not rely on the judgment of the preceding grand jury. At a minimum, the government attorney was obligated to provide some guidance as to how the jurors should utilize the two transcripts in determining whether or not an indictment should be returned. To be sure, the jurors realized that they were not going to hear from a live witness. Yet, it cannot be assumed that they possessed the astuteness to evaluate properly the reliability and trustworthiness of the hearsay evidence. In fact, it is reasonable to draw an inference to the contrary, since Mr. Buckley was an admitted perjurer and his demeanor evidence was particularly important in order for the grand jury to determine whether he was engaging in further fabrications. Cf. National Labor Relations Board v. Dinion Coil Co., 201 F.2d 484, 487–490 (2 Cir. 1952).

 Second, the prosecutor failed to alert the second grand jury that the transcripts upon which it was to base an indictment were permeated with perjurious statements as to crucial, material events. Buckley's false testimony before the first grand jury poisoned the waters of evidence. This impurity could be removed only with careful and conscientious deliberation by the jurors. Cf. Mesarosh v. United States, 352 U.S. 1, 14, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956). While the first grand jury was fully aware of the discrepancies in Buckley's testimony before it returned the original indictment, it cannot be assumed that the second grand jury recognized that portions of the evidence before it were tainted. This stain of falsehood should have weighed heavily in the balance before the second indictment was returned. The defendants cannot be permitted to stand trial on an indictment which to the government's knowledge may have been founded on perjured testimony. See United States v. Basurto, 497 F.2d 781, 785–787 (9 Cir. 1974).

 Third, for some unexplained reason, the prosecutor failed to supply the second grand jury with the full and complete record of the proceedings before the first grand jury. In light of Buckley's offensive and wilful lies to the prior grand jury, the corroborating evidence of the testimony of the police officer and the gambling paraphernalia was essential for a thorough evaluation by the second grand jury of the government's case against the defendants.

 Fourth, the second grand jury was composed of individuals different from those who had first indicted the defendants. This circumstance is sufficient to distinguish the cases upon which the government relies to support the legality of the indictment. For example, in Eidson v. United States, 272 F.2d 684 (10 Cir. 1959), the court did rule that the same evidence may be presented to a grand jury for reindictment. However, it expressly founded this decision on the principle that "[t]he grand jury having heard the witnesses once, it was not essential to the validity of the second indictment that they be recalled and give in the form of repetition the evidence *previously given before the same grand jury*." *Id.* at 687 (emphasis

supplied); see also United States v. Cooper, 464 F.2d 648 (10 Cir. 1972); United States v. James, 290 F.2d 866 (5 Cir. 1961). Moreover, it is by no means certain that the changes sought to be made in the first indictment were, as the government argues, mere "technical" alterations. The first indictment was flawed not only because it contained erroneous citations, but more importantly because it stated that the violation occurred before the effective date of the applicable statute. This *ex post facto* constitutional defect was fatal to the first true bill, cf. United States v. Goldstein, 502 F.2d 526 (3 Cir. 1974), and required a new indictment, as indeed was recognized. Having decided to dismiss the first indictment and return for another indictment before a new grand jury, the government was bound to follow the rules and not to attempt a loose, shortcut procedure fraught with deficiencies of constitutional dimension. Cf. United States v. Fischetti, 450 F.2d 34, 39 (5 Cir. 1971).

Finally, this Court on prior occasions has had cause to remind the Assistant United States Attorneys in this District of the representation made to the Second Circuit by a Connecticut federal prosecutor in United States v. Messina, 388 F.2d 393, 394 n. 1 (2 Cir.), cert. denied, 390 U.S. 1026, 88 S.Ct. 1413, 20 L. Ed.2d 283 (1968): "Counsel for the government advises us that since the *Umans* decision it has been the practice in the District of Connecticut to present to the grand jury only testimony of witnesses with first-hand knowledge except when such witnesses are unavailable or cannot be summoned without causing them extreme inconvenience." In the exercise of its supervisory powers over the conduct of judicial business in this District, this Court must not condone the actions of the prosecutor in the case at bar with "yet another admonition." United States v. Estepa, supra at 1137.

Accordingly, the defendants' motion to dismiss is hereby granted; the indictment is dismissed.