**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Herman CHANEN et al., Defendants-Appellees.**

No. 76–2571.

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1977.

Rehearing and Rehearing En Banc Denied March 28, 1977.

John F. Flynn, Asst. U. S. Atty. (argued), of Phoenix, Ariz., for plaintiff-appellant.

Grant B. Cooper (argued), of Los Angeles, Cal., for defendants-appellees.

## OPINION

Before BARNES and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

After the government had twice presented evidence to a federal grand jury and once had an indictment dismissed, a third effort resulted in the return of an indictment charging defendants Chanen, Lee and Vanlandingham with the same violations of 18 U.S.C. § 371, conspiracy to commit an offense against or defraud the United States, and of 18 U.S.C. §§ 1001 and 2, conspiring to make and making false, fictitious or fraudulent statements in a matter before a department or agency of the United States. Subsequently, however, the district court once again granted the defendants' motion to dismiss the indictment. The government appeals and we reverse.

## I

On May 30 and June 12, 1974, the government presented evidence to a grand jury regarding an allegedly false claim made by National Housing Industries, Inc. (NHI) and several of its officers—Chanen, Lee and Vanlandingham—against the United States in the Court of Claims. The evidence consisted of the live testimony of five witnesses: Theodore P. Crowley, the FBI agent who conducted the investigation into the NHI claim; Richard Lewis, a former NHI employee who submitted an affidavit in support of the claim; Dewey Trawick, a former NHI employee who also was involved in the alleged conspiracy; Donald Ragsdale, another former NHI employee; and Marilyn Boice, a notary public who notarized the signatures on the affidavits presented in support of the NHI claim. It appears that the government at that time neither drafted and presented an indictment to the jury nor requested that the jury return a true bill. The jury did not

vote on the matter. Subsequently, the grand jury was discharged.

There were no further proceedings until October 15, 1975, when the government requested and received from a second and different grand jury an indictment charging the defendants with violating 18 U.S.C. §§ 371, 1001 and 2. The second grand jury returned the indictment after hearing the testimony of Agent Crowley. As part of his presentation, Crowley summarized the testimony of the witnesses given before the first grand jury. He also presented documentary evidence regarding the charges and answered questions.

On the defendants' motion, the district court dismissed the indictment. The court apparently based the dismissal on two grounds: First, no court reporter was present at, and hence no transcript was made of, the proceedings before the second grand jury. Second, the government did not "even make any effort to present the evidence presented to the first grand jury. It's entirely hearsay before the second grand jury by the investigating FBI agent."

On April 15, 1976, with a court reporter present, a government officer read the transcripts containing the testimony given before the first grand jury to a third and different grand jury.[1] Agent Crowley also presented documentary evidence and responded to questions from jurors. The third jury returned a true bill charging the defendants with violations of 18 U.S.C. §§ 371, 1001 and 2.

The defendants moved to dismiss the second indictment, and the motion was granted. In support of his decision to dismiss, the district judge, after reviewing the procedural history of the case outlined here, stated that "the grand jury is entitled to learn what the Government has to offer and evaluate it on that basis. And as long as the Government presented their case live

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

1. Because the testimony of Marilyn Boice before the first grand jury was deemed unhelpful, it was not read to the third grand jury.

before that [the first] grand jury, I think any subsequent grand jury should have the same opportunity." The judge made it clear that, in his view, the dismissal was not based on the use of hearsay evidence before the grand jury.

## II

Two considerations lead us to the conclusion that the district court improperly dismissed the indictment. First, the facts and holdings of the cases dealing with this issue demonstrate rather plainly that the prosecutor's action here falls far short of the type of conduct which has been held sufficiently egregious to require dismissal of the indictment. Second, our view of the respective roles of the Executive (prosecutor) and Judicial (district court) branches of the federal government with respect to the grand jury convinces us that by dismissing the indictment the district judge overstepped the bounds of his authority and improperly interfered with decisions within the domain of the prosecutor.

### A.

On occasion, and in widely-varying factual contexts, federal courts have dismissed indictments because of the way in which the prosecution sought and secured the charges from the grand jury. *See, e. g., United States v. Estepa,* 471 F.2d 1132 (2d Cir. 1972); *United States v. Wells,* 163 F. 313 (D.Idaho 1908); *United States v. De-Marco,* 401 F.Supp. 505 (C.D.Cal.1975), *appeal docketed,* No. 75–3824, 9th Cir. Dec. 29, 1975; *United States v. Gallo,* 394 F.Supp. 310 (D.Conn.1975). These dismissals have been based either on constitutional grounds or on the court's inherent supervisory powers. *See generally United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974); *id.* at

793 (Hufstedler, J., concurring); *United States v. Estepa, supra,* 471 F.2d 1132.[2] Whatever the basis of the dismissal, however, the courts' goal has been the same, "to protect the integrity of the judicial process," *United States v. Leibowitz,* 420 F.2d 39, 42 (2d Cir. 1969), particularly the functions of the grand jury, from unfair or improper prosecutorial conduct.[3]

Almost every court dealing with the issue raised here has confronted a novel set of facts. The range of prosecutorial conduct capable of inspiring allegations of unfairness appears unlimited. Indeed, the facts of this case are unlike those of any other we have been able to find. Nevertheless, a review of the cases, with particular regard for their facts, serves to define the line between prosecutorial conduct which is inimical to "the integrity of the judicial process" and conduct which does not require dismissal of the indictment.

*United States v. Wells, supra,* 163 F. 313, involved flagrantly abusive prosecutorial conduct. The prosecutor entered the grand jury room during that body's deliberations. When requested to leave by one of the jurors, he refused. He then expressed to the jury his personal opinion that the evidence established the guilt of the defendants and urged the grand jury to indict. As part of his address, he stated that the Department of Justice in Washington, D.C., had initiated the investigation and now wanted the indictment and that therefore the grand jury had a duty to indict. He also commented on the "forgetfulness" of the defendants in their testimony before the grand jury. In short, "the [prosecutor's] address was a plea for an indictment, substantially in manner and form as a prosecuting officer would plead for the conviction of defendants before a trial jury." *Id.*

---

**2.** Counsel for defendants emphasized at oral argument that they did not base their claim on constitutional due process considerations but on concepts of "fundamental unfairness" and hence, we presume, on the court's supervisory powers.

**3.** For this reason, we reject the government's contention that the issue in this case is whether the evidence presented to the grand jury was

sufficient—quantitatively and qualitatively—to sustain the indictment. *See United States v. Basurto,* 497 F.2d 781, 784 n.1 (9th Cir. 1974), where we likewise identified the issue "not [as] one relating to the sufficiency of the evidence before a grand jury to sustain an indictment, but rather" one relating to the prosecutor's conduct in the discharge of his duties to the grand jury, the court and the defendant.

at 322. This address, coupled with the prosecutor's demand on the foreman to sign the indictment and his brutal, badgering questioning of the defendants-witnesses, led the court to quash the indictment.

In *United States v. DeMarco, supra,* 401 F.Supp. 505, an attorney in the Watergate Special Prosecutor's office threatened defendant DeMarco with a new indictment in California if he exercised his venue right to move a pending criminal case from Washington, D.C., to his home district, the Central District of California. The prosecutor was anxious to try DeMarco and a co-defendant together. In effect, the venue statutes permitted the defendants to sever their cases. In the face of this threat, DeMarco exercised his statutory right and moved the pending case to California. The prosecutor retaliated by securing a new indictment on an additional charge from a California grand jury. The district court dismissed the new indictment on these grounds:

> [T]he prosecutor did not disclose to the [California] grand jury that the charge could be attacked as an unjustifiable exercise of the charging power. The grand jury was entitled to be apprised of that information [i. e., the government's "venue-bargaining"] so that it could make an independent judgment as to whether it was appropriate to return an indictment under the circumstances.
>
> .    .    .    .    .
>
> In this case, the government did not present information vital to the grand jury's informed and independent judgment.

*Id.* at 513–14.

Both *United States v. Estepa, supra,* 471 F.2d 1132, and *United States v. Gallo, supra,* 394 F.Supp. 310, applied a rule developed by the Second Circuit and dismissed indictments because of allegedly excessive and improper prosecutorial use of hearsay evidence before the grand jury. That rule has been summarized by the Fifth Circuit in these terms:

> [A]n indictment based on hearsay is invalid where (1) non-hearsay evidence is readily available; (2) the grand jury is misled into believing it was hearing direct testimony rather than hearsay; and (3) there is high probability that had the grand jury heard the eye witnesses it would not have indicted.

*United States v. Cruz,* 478 F.2d 408, 410 (5th Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973) (citations omitted).[4]

Despite the holdings of these cases, it is clear that the courts have been reluctant to dismiss indictments because of prosecutorial misconduct. *Beatrice Foods Co. v. United States,* 312 F.2d 29, 39 (8th Cir.), *cert. denied,* 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). This reluctance is demonstrated by a review of several of the many cases where motions to dismiss were denied. For example, in *United States v. Bruzgo,* 373 F.2d 383 (3d Cir. 1967), the defendant alleged that the prosecutor had threatened a grand jury witness, a business associate of defendant, with imprisonment, a fine and loss of citizenship. The prosecutor also allegedly called the witness a "thief" and a "racketeer." For purposes of its decision, the court took these allegations as true. The court first noted that the prosecutor's comments "exceeded the bounds of proper conduct by prosecutors and  .    .    . their use is to be condemned." *Id.* at 386. Nevertheless, the court concluded "that the conduct of the prosecutors before the grand jury did not under the present facts create a defect of constitutional or legal proportions. It follows that the grand jury proceedings were valid and that there was no error in denying defendant's motion to dismiss the indictment." *Id.* at 387.

---

**4.** The Fifth Circuit went on with the following observations regarding the Second Circuit's rule:

> However, this "best evidence" rule has never been considered, even by that [the Second] circuit, as a constitutional requirement.  .    .

> Rather, it serves simply as a supervisory guideline to be employed by courts within their sound discretion to protect potentially innocent citizens from possible prosecutorial manipulation of grand jury proceedings.

478 F.2d at 411 (citations omitted).

In *Laughlin v. United States*, 128 U.S. App.D.C. 27, 385 F.2d 287 (1967), the prosecutor, while questioning a witness before the grand jury, made a reference to allegations of the defendant that another witness was a prostitute. The court noted that the record did not reveal when and even if the defendant had ever made such allegations and that the prosecutor's reference therefore "appears to have been injected gratuitously by [the prosecutor] in a way that could have prejudiced [the defendant] unfairly." *Id.* at 292.

Nevertheless, although we may condemn this incident as bad practice in the abstract, we are not persuaded that the defendants were substantially prejudiced by it. The other competent evidence before the grand jury was ample to support the indictment; and no way does the incident . . . require dismissal of the indictment.

*Id.*

In *Coppedge v. United States*, 114 U.S.App.D.C. 79, 311 F.2d 128 (1962), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963), the defendant alleged that a witness before the grand jury perjured himself. The court refused to dismiss the indictment because the testimony before the grand jury, excluding the allegedly perjured testimony, showed some competent evidence. Chief Justice (then Judge) Burger correctly noted that

public officers [i. e., prosecutors] are charged with a high duty to screen out unreliable witnesses but the critical and final place to detect perjury is on trial when the witness must face the accused before the world and expose himself to the rigors of cross examination and other hazards including contempt.

*Id.* at 132.

In *Loraine v. United States*, 396 F.2d 335 (9th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968), the defendant moved to dismiss the indictment on grounds that the prosecutor, in his presentation to the grand jury, wilfully suppressed evidence that would undermine the credibility of three crucial witnesses before the grand

jury. Apparently one witness had a criminal record and was then under indictment in several other cases; another witness had been charged with embezzlement; the last had been enjoined from dealing in securities. We held that

the trial court did not err in refusing to invalidate a federal indictment because the Government did not produce before the grand jury all evidence in its possession tending to undermine the credibility of the witnesses appearing before that body. Loraine was accorded the full protections of the Fifth and Fourteenth Amendments when, at the trial on the merits, he was permitted to expose all the facts bearing upon his guilt or innocence.

*Id.* at 339.

Although the holdings of all these cases may be difficult to reconcile, we believe that they make it plain that the manner in which the prosecution secured the indictment in the present case cannot serve as the basis for a dismissal. Reading transcripts of sworn testimony, rather than presenting live witnesses, simply does not constitute, on the facts of this case, "fundamental unfairness" or a threat to "the integrity of the judicial process." The prosecutor advised the third grand jury that witnesses Lewis and Trawick had previously made statements inconsistent with their grand jury testimony. Further, their testimony in the transcripts read to the third grand jury contained confessions that they had submitted false affidavits. In light of our decision in *Loraine*, these facts reinforce our conclusion that dismissal is not warranted.

Also, even if we were inclined to follow the Second Circuit's rule regarding the use of hearsay, which we are not, we could not uphold the dismissal. Even if live witnesses had been readily available to testify before the third grand jury, that jury was certainly not misled into believing that it was hearing direct testimony rather than hearsay. Further, given the fact that the prosecutor specifically advised of Lewis' and Trawick's prior inconsistent statements, it seems less than probable that had the grand

jury heard live witnesses it would not have indicted. *See United States v. Cruz, supra,* 478 F.2d at 410–11.

### B.

Even if the action here falls short of the conduct which the courts have held in other instances to require dismissal of the indictment, defendants argue that the district court has a discretionary supervisory power to dismiss the indictment where the court determines that the procedures used by the prosecution to secure the indictment were fundamentally unfair. Accordingly, they argue, the dismissal in this case must be sustained unless it amounts to an abuse of discretion. We believe that the defendants' view of the trial court's discretion is not wholly correct.

In its broadest conceptual outlines, this case presents a conflict between the Executive and Judicial branches of the federal government over their respective relationships to the federal grand jury. The defendants perceive the district court as endowed with broad discretionary powers to supervise the grand jury. By contrast, the government contends that "the manner of conducting grand jury proceedings lies in the discretion of the executive branch guided by law, not in the trial court." In our view, tradition and the dynamics of the constitutional scheme of separation of powers define a *limited* function for both court and prosecutor in their dealings with the grand jury. In this case, it is the court, not the prosecutor, which has exceeded those limits.

■ In resolving disputes involving district court, prosecutor and/or grand jury, some appellate courts have attempted to pigeonhole the grand jury into one of the three branches of government created by the first three articles of the Constitution. For example, it has been said that the grand jury is essentially an agency of the court, and that it exercises its powers under the authority and supervision of the court. *See United States v. Stevens,* 510 F.2d 1101, 1106 (5th Cir. 1975). On the other hand, it has been asserted that grand juries are basically law enforcement agencies and are for all practical purposes an investigative and prosecutorial arm of the Executive branch of the government. *See In re Grand Jury Proceedings,* 486 F.2d 85, 89–90 (3d Cir. 1973). To the extent that these apparently conflicting statements reflect the view that the functions of the grand jury are intimately related to the functions of court and prosecutor, we have no disagreement with them. That view is irrefutable as a matter of fact. But under the constitutional scheme, the grand jury is not and should not be captive to any of the three branches. The grand jury is a preconstitutional institution, *see United States v. Calandra,* 414 U.S. 338, 342–43, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), given constitutional stature by the Fifth Amendment but not relegated by the Constitution to a position within any of the three branches of the government. "The federal grand jury is a constitutional fixture in its own right . . . ." *Nixon v. Sirica,* 159 U.S.App. D.C. 58, 487 F.2d 700, 712 n.54 (1973); *but cf. Brown v. United States,* 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959).

■ Respecting the work of the grand jury, both court and prosecutor play supportive and complementary roles. As a practical matter, the grand jury generally relies on the prosecutor to determine what witnesses to call. Also, in practice the prosecutor conducts the examination of the witnesses and otherwise determines what evidence to present before the grand jury. *See* 1 Wright, Federal Practice and Procedure § 101, at p. 152 (1969); 8 Moore's Federal Practice § 6.02[1] (2d ed. 1976); Note, *The Grand Jury as an Investigative Body,* 74 Harv.L.Rev. 590, 596 (1961). In addition, it is the prosecutor who normally prepares the indictment, *see* 8 Moore's Federal Practice § 6.02[2], at p. 6–18 (2d ed. 1976), although of course the grand jury must review the indictment and adopt it as its own. *See Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969). Some of these functions—such as initiating a criminal case by presenting evidence before the grand jury—qualifies as "an executive function within the exclusive preroga-

tive of the Attorney General." *In re Persico*, 522 F.2d 41, 54–55 (2d Cir. 1975). *See generally United States v. Cox*, 342 F.2d 167 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

■ The court, on the other hand, exercises its power to summon witnesses to attend and to give testimony before the grand jury. Also, "it is the court which must compel a witness to testify if, after appearing, he refuses to do so." *Brown v. United States, supra*, 359 U.S. at 49, 79 S.Ct. at 546. In addition, the court exercises a form of authority over the grand jury when, for example, it dismisses an indictment for failure to charge all elements of the offense or to warn the defendant fairly of the charge against which he must defend. *See United States v. Wabaunsee*, 528 F.2d 1 (7th Cir. 1975). Likewise, the court exercises authority over the prosecutor when it dismisses an indictment because of prosecutorial misconduct. *See* section II, A *supra*. In light of these functions, it has been said that the "grand jury is subject to a supervisory power in the courts, aimed at preventing abuses of its process or authority." 1 Wright, Federal Practice and Procedure § 101, at p. 151 (1969).

■ Nevertheless, given the constitutionally-based independence of each of the three actors—court, prosecutor [5] and grand jury—we believe a court may not exercise its "supervisory power" in a way which encroaches on the prerogatives of the other two unless there is a clear basis in fact and law for doing so. If the district courts were not required to meet such a standard, their "supervisory power" could readily prove subversive of the doctrine of separation of powers.

■ Application of this standard to the present case requires reversal. The asserted legal basis for the district court's interference with a standard prosecutorial decision—what evidence to present to the grand jury and how to present it—is the need to preserve the integrity of the judicial process and to avoid any fundamental unfairness. But as noted in section II, A *supra*, it is far from clear that the prosecutor's decision in this case regarding the presentation of evidence to the third grand jury implicates any of those interests.

REVERSED.

---

5. Our references to the independence of the prosecutor, as an arm of the Executive, are of course made with an awareness of the traditional concept of the prosecutor as an officer of the court.

An attorney for the United States, as any other attorney, however, appears in a dual role. He is at once an officer of the court and the agent and attorney for a client; in the first capacity he is responsible to the Court for the manner of his conduct of a case, *i. e.*, his demeanor, deportment and ethical conduct; but in his second capacity, as agent and attorney for the Executive, he is responsible to his principal and the courts have no power over the exercise of his discretion or his motives as they relate to the execution of his duty within the framework of his professional employment.
*Newman v. United States*, 127 U.S.App.D.C. 263, 382 F.2d 479, 481 (1967).

Also, as we said in an earlier case, the prosecutor owes a duty of good faith to the court, the grand jury and the defendant. *United States v. Basurto, supra*, 497 F.2d at 786.

These two somewhat related concepts do not justify, however, a view of judicial supervisory powers so broad in scope as to risk serious impairment of the constitutionally-based independence of the Executive, *i. e.*, the prosecutor, when acting within his own sphere.