**UNITED STATES of America**

v.

**Osas AYEKI**

**No. 3:03 CR 218 JBA.**

United States District Court,
D. Connecticut.

Oct. 22, 2003.

Da'Tekena Barango–Tariah, Brooklyn, NY, Michael Dolan, Dolan & Sheehan, Timothy J. Lee, Fasano & Ippolito, New Haven, CT, for Defendant.

John A. Marrella, Kevin J. O'Connor, New Haven, CT, for Plaintiff.

*Ruling on Motion to Dismiss Indictment Based on Hearsay [Doc. # 18], Motion to Inspect Grand Jury Minutes [Doc. # 19] and Motion to Dismiss Indictment [Doc. # 20]*

ARTERTON, District Judge.

Defendant Osas Ayeki has filed three motions with the Court: (1) a motion to

dismiss the indictment on the ground that the government secured the indictment through the use of hearsay evidence [Doc. # 18]; (2) a motion to inspect grand jury minutes in connection with the indictment in this case [Doc. # 19]; and (3) a motion to dismiss the indictment for lack of jurisdiction, improper venue, failure to state an offense against the United States, and outrageous conduct by the government [Doc. # 20]. For the reasons discussed below, defendant's motions are denied.

## I. Background:

Osas Ayeki was arrested on July 22, 2003 pursuant to a warrant issued by the Honorable Joan Glazer Margolis, and was ordered detained without bond pending trial at a detention hearing on July 23, 2003. On July 29, 2003, a grand jury sitting in Hartford returned a one-count indictment against Osas Ayeki charging him with conspiracy to traffic and use unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2). The arrest and indictment followed the United States Postal Inspection Service's investigation of an identity theft ring operating in Connecticut, New York, Massachusetts, and Rhode Island that distributed and used stolen credit cards to obtain cash advances from banks. Two witnesses, Abiodun Olagundoye and Audley Stewart, who pled guilty to credit card fraud charges and entered into cooperation agreements with the Government, identified Ayeki as a member of the conspiracy. The indictment [Doc. # 8] alleges that between April and November of 2002, Ayeki received credit cards that had been stolen from the United States Mail, and activated or caused to be activated at least 60 stolen credit cards, by having a member of the conspiracy call the issuing credit card company pretending to be the person to whom the card was issued. The indictment also alleges that Ayeki created or caused to be created false identification documents, including driver's licenses, in the names of the persons to whom the credit cards had been issued, and that using the stolen credit cards and false identification documents, Ayeki and his co-conspirators presented the credit cards at banks in Connecticut and other states to obtain cash advances ranging from $500 to $4,800. Ayeki allegedly would then take 50% to 60% of the cash and his co-conspirators would keep the remainder. The indictment alleges that at least six overt acts in furtherance of the conspiracy occurred in Connecticut.

On August 11, 2003, the United States District Court for the Eastern District of New York issued a warrant for Ayeki's arrest, based on a criminal complaint alleging violations of law as a result of Ayeki's distribution of stolen credit cards to Stewart in Brooklyn, New York, in June and July of 2003. The criminal complaint states that Stewart, acting in an undercover capacity under the direction of Postal Inspectors, met with Ayeki on several occasions between June 26 and July 22, 2003. According to the complaint, at these meetings, Ayeki gave Stewart stolen credit cards and fraudulent identification documents, and Stewart gave, or agreed to give, Ayeki cash or merchandise that he feigned having obtained by using the stolen credit cards and false identification documents. According to the Government, because Ayeki has been detained since his arrest on July 22, 2003, the arrest warrant from the Eastern District of New York has not been executed.

## II. Discussion

Defendant Ayeki's pending motions seek dismissal of the indictment, or in lieu of dismissal, disclosure of the grand jury minutes in order to establish grounds for dismissal of the indictment. In support of dismissal or disclosure, Ayeki alleges ir-

regularities in the grand jury proceeding involving the use of hearsay testimony. Ayeki also argues for dismissal of the indictment on the basis that this court is without jurisdiction, that venue is improper, that the indictment does not state facts sufficient to constitute an offense against the United States, and that the Government's conduct was outrageous, constituting a due process violation so severe as to bar the criminal prosecution.

## A. Standard for Disclosure of Grand Jury Minutes

The secrecy of grand jury proceedings is well established. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943). In certain circumstances, however, a court may order the disclosure of a grand jury matter. As Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure provides, a court:

> may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter: ... (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

Because of the "indispensable secrecy of grand jury proceedings," *United States v. Johnson*, 319 U.S. at 513, 63 S.Ct. 1233, disclosure is permissible only "where there is a compelling necessity." *Procter & Gamble, Co.*, 356 U.S. at 681, 78 S.Ct. 983. Thus, grand jury proceedings "carry a 'presumption of regularity,'" and "a review of grand jury minutes is rarely permitted

without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 232–33 (2d Cir.1990) (quoting *Hamling v. United States*, 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)); *see also United States v. Wilson*, 565 F.Supp. 1416, 1436–37 (S.D.N.Y.1983) (denying motion to inspect grand jury minutes for lack of factual support to overcome presumption of regularity, noting that "speculation and surmise as to what occurred before the grand jury is not a substitute for fact").

## B. Standard for Dismissal of the Indictment

■ Dismissal of an indictment is proper only if the errors in the grand jury proceedings prejudiced the defendant. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *Torres*, 901 F.2d at 232. A district court cannot dismiss an indictment "for prosecutorial misconduct not prejudicial to the defendant." *Bank of Nova Scotia*, 487 U.S. at 254, 108 S.Ct. 2369. Prejudice to the defendant is established if " 'the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. 2369 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)).

## C. Use of Hearsay Evidence in Grand Jury Proceedings

Because the rules of evidence do not apply at the grand jury stage, hearsay testimony is generally allowed.[1] *See Costello v. United States*, 350 U.S. 359, 363, 76

---

1. The Grand Jury Charge for this Court includes as an instruction:

    Hearsay testimony, that is, testimony as to facts not known by a witness of his or her own personal knowledge but told by others, may be considered by you and may be sufficient to provide a basis for returning an indictment against an accused. You must

S.Ct. 406, 100 L.Ed. 397 (1956) (finding indictment properly returned where "all the evidence before the grand jury was in the nature of hearsay," so long as grand jury was "legally constituted and unbiased"); *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (noting that grand jury's "operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"). Under Second Circuit precedent, "[t]he use of hearsay testimony raises questions about the validity of an indictment only when the prosecutor misleads the grand jury into thinking it is getting first-hand testimony when it really is receiving hearsay, or where there is a high probability that if eyewitness rather than hearsay testimony had been used, the defendant would not have been indicted." *United States v. Dyman*, 739 F.2d 762, 767 (2d Cir.1984) (citing *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir.1972); *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir.1969)).

Here, Ayeki's counsel, Da'tekena Barango–Tariah, has submitted his personal affidavits in support of the motions to dismiss the indictment and to inspect grand jury minutes, tracking the language of these Second Circuit decisions. Barango–Tariah's affidavit accompanying the motion to inspect the grand jury minutes alleges that the prosecutor misled the grand jury about the nature of the testimony, but provides no factual basis to support this allegation. *See* Affidavit of Da'tekena Barango–Tariah in Support of Motion to Inspect Grand Jury Minutes [Doc. # 19] at ¶ 6 ("I further have reason to believe that the grand jury was misled and deceived as to the nature of such hearsay evidence, as a result of

which the grand jury returned the indictment in the mistaken belief that it was based on competent eyewitness testimony."). Barango–Tariah also states in an affidavit accompanying the motion to dismiss the indictment, again without factual support, that the indictment would likely not have been returned had the witnesses testified in person, because the grand jury "could not assess the credibility of each witness by viewing his demeanor and manner in responding to questions. Further, the grand jurors would not have had the opportunity to examine the witnesses by asking questions concerning their individual doubts or conclusions." *See* Affidavit of Da'tekena Barango–Tariah in Support of Motion to Dismiss Indictment Based on Hearsay [Doc. # 18] at ¶ 7.

■ In the absence of factual support for these allegations, Ayeki has failed to meet his burden for inspection of grand jury minutes, or to trigger an *in camera* review. *See Torres*, 901 F.2d at 232. Moreover, Ayeki has failed to establish a high probability that the indictment would not have been returned had the government's witnesses testified. While he argues, without specific factual support, that the witnesses' credibility might have been called into question had they testified, it is equally plausible that the eyewitness testimony might have bolstered the government's case. Without a showing of prejudice, the allegations are insufficient to support dismissal of the indictment for improper use of hearsay. *See Bank of Nova Scotia*, 487 U.S. at 254–56, 108 S.Ct. 2369.

**D. Jurisdiction and Venue**

■ Under 18 U.S.C. § 3237, "any offense against the United States begun in

be satisfied only that there is evidence against the accused showing probable cause, even though such evidence is composed of hearsay testimony that might or might not be admissible in evidence at trial.

United States District Court, District of Connecticut, Grand Jury Charge (Rev. November 2002) at 4.

one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." With respect to a charge of conspiracy, jurisdiction and venue are proper "in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the conspirators." *United States v. Rosa,* 17 F.3d 1531, 1541 (2d Cir.1994); *see also United States v. Rodriguez–Moreno,* 526 U.S. 275, 281, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (" 'where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.' ") (quoting *United States v. Lombardo,* 241 U.S. 73, 77, 36 S.Ct. 508, 60 L.Ed. 897 (1916)). The government has the burden of proving by a preponderance of the evidence that venue is proper. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 968 (2d Cir.1990).

Here, it is premature to decide the issue of venue. The indictment alleges that Ayeki participated in a conspiracy "in the District of Connecticut and elsewhere" to "knowingly and with intent to defraud traffic in and use unauthorized access devices, that is, credit cards ..." *See* Indictment [Doc. # 8] at ¶ 8. The indictment lists six specific overt acts in furtherance of the conspiracy allegedly committed in the District of Connecticut. *See id.* at ¶¶ 17–22. Since the indictment, on its face, properly alleges venue in the District of Connecticut, there is no basis at this stage for moving for dismissal because of improper venue. *See United States v. Gross,* 276 F.2d 816, 819 (2d Cir.1960).

■ Ayeki is nonetheless "entitled to await the government's case and to move when the government failed to prove that all the elements charged to have taken place in the [District of Connecticut] in fact occurred there." *Id.* Because proper venue is a constitutional right, a conviction cannot be obtained if venue has not been established. *See* U.S. Constitution, Amend. 6 ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ..."). If the government has failed to meet its burden of establishing venue at trial, Ayeki may move for a judgment of acquittal under Fed.R.Crim.P. 29 at the conclusion of the government's case.

**E. Sufficiency of the Indictment**

An indictment is sufficient if it " 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). As the Second Circuit has repeatedly stated, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992) (quoting *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975)); *see also United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.1983); *United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

Here, the indictment charges Ayeki with a violation of 18 U.S.C. § 1029(b)(2), which states:

Whoever is a party to a conspiracy of two or more persons to commit an offense under subsection (a) of this sec-

tion, if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offense under subsection (c) of this section or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under subsection (c) of this section, or both.

Subsection (a) makes it unlawful for one to: "(2) knowingly and with intent to defraud traffic[ ] in or use[ ] one or more unauthorized access devices during any one-year period, and by such conduct obtain[ ] anything of value aggregating $1,000 or more during that period".

■ The indictment closely tracks the language of the statute, naming Ayeki and two associates as co-conspirators, and stating that Ayeki knowingly participated in the conspiracy to obtain unauthorized cash advances using stolen credit cards, by activating or causing to be activated at least 60 stolen credit card, creating or causing to be created false identification documents, distributing the stolen credit cards and false identification documents, coaching co-conspirators on how to use items to engage in fraudulent financial transactions, and receiving a portion of the cash advances the co-conspirators obtained. The indictment also lists six overt acts that Ayeki's co-conspirators allegedly performed in furtherance of the conspiracy between April and November 2002.

The indictment gives Ayeki notice of the charge against him and is adequate to avoid the possibility of double jeopardy. Nothing more is required in an indictment. Ayeki's argument that "no conspiracy could be established or was established by the indictment," Def.'s Mem. Supp. Mot. Dis. Indict. [Doc. # 20] at 4, is an issue for trial, not for a motion for dismissal of the indictment.

## F. Outrageous Government Conduct

■ The threshold for establishing outrageous government conduct as a due process violation requiring dismissal of an indictment is very high. As the Second Circuit stated in *United States v. Chin*, 934 F.2d 393 (2d Cir.1991), "the existence of a due process violation must turn on whether the governmental conduct, standing alone, is so offensive that it 'shocks the conscience.'" *id.* at 398 (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). While extreme physical or psychological coercion satisfies this test, routine investigative conduct does not, even if it influences a defendant to commit a crime. *See id.* ("[W]hether investigative conduct violates a defendant's right to due process cannot depend on the degree to which the governmental action was responsible for inducing the defendant to break the law."); *see also United States v. La Porta*, 46 F.3d 152, 160 (2d Cir.1994) (finding that government sting operation did not constitute outrageous government conduct).

■ While Ayeki states that law enforcement authorities broke into his residence on February 14, 2003, took away his wife for over 24 hours, and seized his computer and driver's license, he does not allege that these actions were outside the bounds of the search warrant or valid law enforcement authority. In addition, while he states that he would not have committed credit card fraud if he had not been induced to do so by the government's witnesses, his allegations of improper government conduct in the use of these witnesses are vague. Ayeki states that the Postal Inspector "instruct[ed] the government witness to badger and cajole the defendant into entering such an agreement," and that the cooperating witness "produc[ed] the photographs and insist[ed] that the defendant obtained [sic] driver's licenses with the photographs," and "offer[ed] to share

money with the defendant if he got into the arrangement." *See* Def.'s Mem. Supp. Mot. Dis. Indictment [Doc. # 20] at 6. Although the government disputes this characterization, noting that it has recordings of Ayeki's encounters with the cooperating witness, the allegations in themselves do not rise to the level of outrageous government conduct.[2]

## III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss Indictment Based on Hearsay [Doc. # 18], Motion to Inspect Grand Jury Minutes [Doc. # 19], and Motion to Dismiss Indictment [Doc. # 20], are DENIED.

IT IS SO ORDERED.

---

**2.** Ayeki also argues that the government's erroneous representation that he had been previously convicted of petty larceny and forgery constitutes outrageous government conduct. This representation was made at his July 23, 2003 detention hearing before the Magistrate Judge. There is no evidence, however, that the government's misrepresentation was knowing or intentional, as the government corrected its mistake at the next court appearance for Ayeki's arraignment on August 25, 2003. At the arraignment, the government acknowledged that there was uncertainty about the ultimate disposition of these previous criminal cases. The government now states that it appears that Ayeki "received some sort of accelerated rehabilitation, pursuant to which he did not end up with a criminal conviction." *See* Gov't's Consol. Resp. [Doc. # 21] at 16. Ayeki makes no showing of prejudice to him, as Magistrate Judge Margolis based her detention decision on Ayeki's risk of flight, not on his prior criminal convictions. *See* [Doc. # 21, Ex. B] at Attachment B.