**UNITED STATES of America,
Plaintiff,**

v.

**Victoria L. RAY, Defendant.**

**No. CR 02–55–M–DWM.**

United States District Court,
D. Montana.

July 29, 2003.

William W. Mercer, U.S. Attorney, District of Montana, Missoula, MT, Steven L.

Lane, U.S. Department of Justice, Washington, DC, for United States.

Melissa Harrison, David Avery, Federal Defenders of Montana, Missoula, MT, for Victoria Ray.

ORDER

MOLLOY, Chief Judge.

## I. Introduction

Congress recently enacted legislation requiring the chief judge of each district court to ensure that certain information is assembled so that it can be submitted by the court to the Sentencing Commission. 28 U.S.C. § 994(w). By virtue of this statute, Congress institutionalized authority reflected in a March 12, 1997 memo from the Administrative Office that requested "each Chief Judge designate a procedure" for getting certain documents to the Sentencing Commission. That same memo, which predates the most recent enactment, suggests that the court could look to the United States Attorney's office to participate in assembling documents for the Sentencing Commission if the court determined that to be an efficient way to accomplish the task of collecting documents for submission.

Montana is unique in that there is no central hub for the court's operation. The court operates from five divisions; three active judges work with a clerk's office and a probation office in each division. When the recent legislation was enacted, the judges met and discussed the most efficient way to *assemble* the data to meet the reporting and submission requirements imposed on the court by the new law. Because the United States Attorney's office is the one agency that has access to, and knowledge of, every criminal case in each division of the district, the judges determined that the most efficient means of complying with the new statutory mandate was to have the data assembled by one agency, the United States Attorney's

office. The Court adopted Standing Order DWM–28 to ensure compliance with the law.

In the past, the collaborative effort between the court, the clerk's office, probation, the United States Marshals and the United States Attorney's office has been one of cooperation. The court accommodates the government in various ways to improve the administration of justice. As an example, when Indictments are returned, the clerk's office makes multiple copies of the Indictments, summonses, warrants, criminal cover sheets, grand jury concurring sheets, lists of all indictments, and all orders for distribution to various agencies and the defendants, at no cost to the United States Attorney. In addition, the Clerk routinely makes copies of documents from case files and never assesses any fees or costs to the United States Attorney for this service. On the other hand, the United States Attorneys have consistently complied with court-ordered submission of trial notebooks, witness lists, exhibit lists and a myriad of other requirements imposed by the court, or individual judges, so as to promote efficiency in the administration of justice. Nonetheless, Standing Order DWM–28 has caused a great hue and cry and a notable refusal to comply with an order adopted to "ensure that" the materials Congress wants are compiled so they can be submitted by the Court in a timely fashion.

The United States asks the Court to set aside Standing Order DWM–28. A hearing on the United States' motion was held on June 9, 2003, before Chief Judge Donald Molloy and Judges Richard Cebull and Sam Haddon. After considering their arguments and briefs, the Court finds that the United States has failed to establish that Standing Order DWM–28 is clearly erroneous or otherwise contrary to law. Accordingly, the motion to set aside is

denied. The United States Attorney shall within ten (10) days of this Order, assemble and submit the materials required by Standing Order DWM–28.

## II. Background

On April 30, 2003, President Bush signed into law the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act). The PROTECT Act, also known as the AMBER Alert law, deals generally with issues related to missing, abducted, and exploited children. The Feeney Amendment, which included a provision imposing reporting requirements on district courts, was attached as an amendment to the PROTECT Act. The Feeney amendment was added at the last minute and "[e]nacted without hearings or meaningful debate." *See* 149 Cong. Rec. S6708–01, *S6711 (daily ed. May 20, 2003)(statement of Sen. Kennedy).

The PROTECT Act requires that

[t]he Chief Judge of each district court shall ensure that, within 30 days following entry of judgment in every criminal case, the sentencing court submits to the Commission a written report of the sentence, the offense for which it is imposed, the age, race, sex of the offender, and information regarding factors relevant by the guidelines. The report shall also include—

(A) the judgment and commitment order;

(B) the statement of reasons for the sentence imposed (which shall include the reason for any departure from the otherwise applicable guideline range);

(C) any plea agreement;

(D) the indictment or other charging document;

(E) the presentence report; and

(F) any other information as the Commission finds appropriate.

PROTECT Act of 2003, § 401(h), 117 Stat. 650, 672 (2003)(to be codified at 28 U.S.C. § 994(w)(1)). These reporting requirements became effective May 1, 2003.

To comply with the Chief Judge's duty to ensure that judges within the district are meeting the reporting requirements, on May 9, 2003, the Court issued Standing Order DWM–28. Before issuing the Standing Order, the active judges in the district discussed the best means to implement the new reporting requirements. Each judge concurred with the provisions in the Standing Order. The Standing Order requires that within 20 days of sentencing in each case the United States Attorney shall assemble a "Report of Sentence" that includes the following documents:

(a) a cover page setting forth the sentence, the offense or offenses for which it was imposed, the age, race, and sex of the offender, and all adjustments and departures actually applied in fashioning the sentence;

(b) a copy of the judgment and commitment order;

(c) a copy of the court's statement of reasons for the sentence imposed;

(d) a copy of any plea agreement;

(e) a copy of each all charging document (sic) filed in the case, including complaints, indictments, superceding indictments, informations, and superceding informations; and

(f) a copy of the presentence report.

Standing Order DWM–28, at 1–2.[1] The United States Attorney then sends the

---

1. The materials required by Standing Order DWM–28 include all documentation in the prosecution of defendants so that the Commission and Congress can take into account any "charge bargaining" or "fact bargaining" that is not necessarily reflected in the plea agreement or final charge, i.e. superseding information or indictments. See, *Berthoff v. United States,* 140 F.Supp.2d 50 (D.Ma.2001).

assembled Report of Sentence to the Clerk of Court so it can be reported to the Chief Judge and then sent by him to the Sentencing Commission as the new statute requires. *Id.* at 2.

### III. United States' Arguments

The United States challenges Standing Order DWM–28 on four grounds: first, it argues the PROTECT Act leaves previous reporting requirements imposed on the courts basically unchanged; second, Standing Order DWM–28 conflicts with Congress' intent as expressed in the plain language of the PROTECT Act; third, the Standing Order exceeds the Court's supervisory authority and violates separation of powers; and fourth, enforcement of the Standing Order is barred by the doctrine of sovereign immunity. Because the first and second arguments are interrelated, they are addressed together. The third and fourth arguments are addressed separately.

### IV. Analysis

**A. Standing Order DWM–28 does not conflict with the intent of the PROTECT Act**

■ The United States argues that before the PROTECT Act took effect, the Court was required to report similar information to the Sentencing Commission and that the Court compiled the information through the Probation Office. From this premise, the government then argues that Congress is presumed to have been aware of this arrangement and is also presumed to have incorporated it into the PROTECT Act. Thus, according to the argument, the Court is acting contrary to the plain mean-ing of the Act by attempting to shift its reporting burden to the United States Attorney, despite "clear" Congressional intent to the contrary. The United States also maintains this scheme is mistaken because the PROTECT Act already requires it to report detailed information to Congress and Standing Order DWM–28 only adds to that burden.[2]

The pre-PROTECT Act version of 28 U.S.C. § 994(w) (the "old version") required that

> [t]he *appropriate judge or judicial officer shall submit to the Commission* in connection with each sentence imposed (other than a sentence imposed for a petty offense, as defined in title 18, for which there is no applicable sentencing guideline) a written report of the sentence, the offense for which it is imposed, the age, race, and sex of the offender, information regarding factors made relevant by the guidelines, and such other information as the Commission finds appropriate. (Emphasis added)

The post-PROTECT Act version of § 994(w) (the "new version") mandates the same reporting requirements but adds specific documents that must be included with the report of sentence. The new version of § 994(w) also mandates that "[t]he Chief Judge of each district court *shall ensure* that ... the sentencing court submits to the Commission a written report of the sentence." (emphasis added). This change is a new concept and structure from the old version of § 994(w) in that, the old version required only that the "appropriate judge or judicial officer" sub-

---

**2.** The latter argument is not persuasive. Under the "plain language" of the Act, the United States' reporting requirements will be waived if the Attorney General, within 90 days of the Act's effective date, prepares a report detailing "the policies and procedures that the Department of Justice has adopted subsequent to the enactment of this Act" to ensure downward departures are consistently appealed. The United States' brief minimizes this provision. It also ignores the fact that under Standing Order DWM–28 the Court maintains the duty to report as required by Congress.

mit a report of sentence, while the new law places a burden on the chief judge to ensure compliance by all the judges in the district. The new law incorporates no statutory guidelines for how the chief judge shall "ensure" compliance. Instead, it leaves that task to individual chief judges, considering the circumstances of his or her district's needs.

The new version of § 994(w) did not materially change the documents the Court must submit to the Sentencing Commission. It does not follow, however, that the Court is precluded from enlisting the assistance of the United States Attorney in collecting the information. The United States' argument to the contrary is based largely on its supposition that the Sentencing Commission and the Administrative Office interpreted the old version of § 994(w) as *requiring* the Probation Office in each district to submit reports of sentence. *See* Brief of United States, at 2–3 (*citing* Sourcebook of Federal Sentencing Statistics (2001), p. iii). The United States' own exhibits establish that this was not the case.

The old version of § 994(w) did not mandate that the Probation Office gather documents for reporting. The "Memorandum of Understanding" between the Sentencing Commission and the Administrative Office establishes, through a working agreement, that responsibility for reporting was ultimately up to the courts.[3] That the proba-

tion offices were generally responsible for complying with the old reporting requirements amounts to an interpretation of the statute that is irrelevant.[4] This is primarily so because, while the old law accommodated decentralization by requiring each judge to individually report, the new law adds a layer of responsibility requiring the chief judge to ensure that his or her colleagues have satisfied the reporting requirements.

The Court also rejects the United States' contention that Standing Order DWM–28 is contrary to Congress' clear intent. The ostensible purpose of § 994(w) is to make the courts report information about sentences and departures to ensure a measure of consistency in sentencing throughout the country. Who assembles the documents to be submitted by the court does not affect the purpose of the statute and is not relevant, except to the extent that it reflects the chief judge's efforts to ensure compliance with the new statutory duty to report. Under the Standing Order, the Court still reports to the Commission as the statute requires. By charging the United States Attorney with assembling the documents to be submitted, the Court is relying on a central means of ensuring that the PROTECT Act's reporting requirements are resolved in the most efficient manner.

---

**3.** The memo recognized that most districts asked the probation office to gather the documents, but went on to recognize that particularly where the probation office is not involved in the proceeding, *the Chief Judge may want to meet with the United States Attorney's office and others to decide on the most efficient way to submit changes to the judgement* that result from, for example, Rule 35 motions, retroactive amendment motions, post-conviction relief motions, and resentencing on remand from an appellate court. *These may be sent directly by other entities, or channeled through probation, as the court wishes.*

Memorandum of Understanding, attached as Exhibit 1 to the United States' brief, at 2. The memo further asked "that each Chief Judge designate a procedure by which [requested] documents are sent to the Commission." *Id.*

**4.** The Sourcebook cited by the United States notes in the introduction that the Sentencing Commission "requested" that probation offices in each district submit certain documents. This is different than an interpretation that the old version of § 994(w) required the probation office to submit the document.

The United States cites many cases to support its argument, yet provides no analysis. The lack of analysis is not surprising, as examination shows that the facts of the cases are not applicable to the pending motion. For example, the United States cites *Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) for the proposition that "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." Though this statement is correct as a broad legal proposition, it does not apply here.

In *Badaracco*, a taxpayer challenged a provision in the Internal Revenue Code that eliminated the three-year statute of limitations for assessment of income tax and allowed the IRS to assess taxes "at any time" when a false or fraudulent return was filed. The taxpayer had filed a fraudulent return, but later filed an accurate amended return. The taxpayer urged the Supreme Court to apply a nonliteral reading to the statute of limitations, arguing in part that it would be good policy to allow the three-year statute of limitations to begin running again after an accurate return was filed. It was in this context that the Supreme Court stated, "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." 464 U.S. at 397–98, 104 S.Ct. 756.

The situation in *Badaracco* is not the same as the ministerial function occurring here. Requiring the United States Attorney to assemble the information to be submitted to the Sentencing Commission does not undermine or attempt to rewrite the new version of § 994(w). It is a procedure that reflects the unique characteristics of a geographically and administratively diverse district. The United States Attorney's office is the central agency that garners the full panoply of information in any

given criminal case. There are no guidelines for how the chief judge is to "ensure" that reporting is occurring as directed, nor is there any indication in the statute that the court is precluded from delegating through an order the collection of information. In fact, the Memorandum of Understanding indicates that the Sentencing Commission and the Administrative Office contemplated that the United State Attorneys' Offices would be involved if the chief judge decided that was the most efficient way to comply. *See* Memorandum of Understanding, attached as Exhibit 1 to the United States' brief, at 2. It was this Court's determination, a determination with which the other judges in the district concurred, that requiring the United States Attorney to collect the information required by the new version of § 994(w) is the most efficient way to ensure the assembly of information so the Court can comply with the reporting requirements.

The United States argues throughout its brief that Congress clearly intended that the courts be responsible for reporting and the statute clearly intended that the courts not be allowed to delegate collection of materials. While the first notion may be accurate, the second is not. Under the PROTECT Act, the sentencing court must submit a written report of each sentence and the chief judge of each district must ensure that this is done. To ensure means to guarantee or to warrant that the assigned task is completed. The statute does not prohibit adoption of efficient procedures to ensure compliance. The government argues to the contrary and supports its argument through analogies and supposition, not by pointing to "plain language." For example, the United States contends that the materials to be gathered "consist largely of matters determined and materials prepared by the sentencing court and the probation office—e.g., the judgment and commitment order, the statement of

reasons, presentence report." This ignores that charging documents and plea agreements are prepared by the United States Attorney. It also ignores the fact that the Justice Department is the one agency that should regularly keep a complete file on all aspects of a prosecution from charge through appeal.

Any argument that it should be presumed that Congress knew the courts were using the probation offices to report information and intended to incorporate a similar process into the PROTECT Act can cut either way. Though the United States maintains this means the Court is not allowed to delegate the assembly of materials to anyone other than the probation office, it is equally plausible that Congress knew the courts were delegating the reporting of information and, by not specifically prohibiting this practice, intended to continue to allow the courts to do so.

In short, the definition of "ensure" means the court can use any reasonable means necessary to guarantee or warrant the reporting requirements placed on it by the new statute. By delegating the assembly of information to the United States Attorney, the Court is not undermining the intent of the PROTECT Act; it is still the Court that is submitting the Report of Sentence to the Sentencing Commission. The process is the district's means of making sure the Chief Judge is "ensuring" that the Act is complied with.

**B. The Standing Order does not exceed the Court's supervisory authority, nor does it violate separation of powers.**

■ The United States next argues that the Court lacked authority to issue Standing Order DWM–28 because it was not issued in a case, yet it imposed obligations and costs on the United States Attorney. Most of the United States' argument on this issue is based on its earlier argument

that the Standing Order conflicts with the clear intent of the PROTECT Act. The Court has already addressed and rejected this argument. Furthermore, the argument impliedly suggests the identical order in each case would not be subject to the same defect it claims exists in the Standing Order. Of course, this contention raises the question of what is left by the law to the chief judge in deciding how to ensure accurate information is assembled so he or she can warrant the judges are complying with the new law.

The United States' assertion that Standing Order DWM–28 violates separation of powers misconstrues the impact of the Standing Order. The Standing Order does not require that the United States Attorney "assume [the Court's] reporting requirements," as the United States contends. Rather, the order directs a means of information assembly; that is the United States Attorney assembles information for submission to the Court that it is privy to and that is relevant to each case. The Standing Order is no different than the Court's requirement that the United States assemble proposed jury instructions and trial briefs, exhibit lists, witness lists, and that it use the available court technologies in each criminal case that is tried.

Again, the government cites several cases for broad propositions contained within them. Analysis of the cited cases shows they are inapplicable. However, one deserves mentioning. The United States cites *United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir.1977) as follows:

A court may not exercise "supervisory power" in a way which encroaches on the prerogatives of the other two [*branches*] unless there is a clear basis in fact and law for doing so. If the district courts were not required to meet such a standard, their "supervisory power" could readily prove subversive of the

doctrine of separation of powers. (emphasis added).

Brief of United States, at 15.

In *Chanen,* the district court dismissed an indictment because it did not like the type of evidence the United States Attorney presented to the grand jury. The Ninth Circuit determined that it is up to the prosecutor to decide what type of evidence to present and it held that the district court's dismissal violated separation of powers. 549 F.2d at 1308, 1309. The United States supports its argument in this case by changing the meaning of the quoted material by adding "branches" to the above quoted language. In the paragraph from which the quote is taken, the Ninth Circuit is talking about the interaction between and among the court, the prosecutor, and the *grand jury,* not the three branches of government.[5] *See Id.* at 1313.

Standing Order DWM–28 does not violate separation of powers. The government relies on general legal propositions and its earlier argument that the PROTECT Act clearly requires the courts to report. As discussed, however, the Court is not requiring the United States Attorney to report information to the Sentencing Commission, and this is not a situation where the Court has ordered the United States Attorney to take some action completely unrelated to his duties. The purpose and effect of Standing Order DWM–28 is to require the United States Attorney to assemble a report of sentence composed of documents within its possession. Because the Congress did not define "ensure," and the terms of Standing Order DWM–28 do not conflict with the intent of § 994(w), the requirements are within the Court's discretion and do not violate the separation of powers. Congress left it to the courts to decide the means available to the chief judge to meet his or her reporting duty.

## C. Enforcement of the Standing Order is not barred by the doctrine of sovereign immunity

■ The next argument is that sovereign immunity prevents this Court from doing anything to enforce Standing Order DWM–28 that will require the United States Attorney to spend its budgeted money. If this proposition is true, it eviscerates the independence of the judiciary to manage assigned cases. The cases cited by the government are inapplicable and its argument makes little sense. The United States again cites the broad legal propositions that, "sovereign immunity bars a federal court from 'exercis[ing] its compulsive powers to restrain the Government from acting, or to compel it to act,'" citing *Larson v. Domestic & Foreign Commerce Corp., Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Brief of United States, at 17. As with other cases cited, the facts of the case do not apply here.[6]

---

**5.** The addition of the word "branches" materially alters and mischaracterizes the meaning of the paragraph. At oral argument, the United States could not provide an explanation for this change, nor a citation to any authority to support it. The change in language suggests an intent to mislead the Court into believing *Chanen* stands for something it does not. This is an example of the rhetoric used by the government throughout its brief: cite cases for broad propositions while failing to mention that the facts of the case do not apply. In citing the case of *Chanen,* it is apparent the brief's author wanted the case to say something it does not and simply changed the language to suit the writer's goals.

**6.** The specific language cited by the U.S. in its brief claims that the court cannot restrain the government or force it to act. But in *Larson,* the comment is made in the context of damages, on the principle that the government

**1168**

The United States does not argue that the Court is precluded from issuing orders related to individual cases that compel the United States Attorney to take some action. Nor does it argue that the Court cannot compel the United States Attorney to comply with those orders. That is all that has happened here: the Court is requiring the United States Attorney to collect certain information within the context of each criminal case. This does not amount to a transfer of funds and does not fall under the proscription of *Larson.* Thus, Standing Order DWM 28 does not fall foul of sovereign immunity.

### V. Conclusion

Congress has charged each Chief Judge in the United States with the duty of ensuring his or her district complies with the reporting requirements of the PROTECT Act. The Act does not establish any standards for how chief judges are to comply with their duties. By requiring the United States Attorney to assemble information to be reported to the Sentencing Commission, the Court has chosen the most efficient means for complying with the provisions of the Act. Because the Court is still reporting the information, Standing Order DWM–28 is consistent with the provisions of the PROTECT Act and does not conflict with the intent of Congress; nor does Standing Order DWM–28 violate separation of powers or contravene sovereign immunity. As such, Standing Order DWM–28 is a valid exercise of the Court's authority and is neither contrary to law nor clearly erroneous.

Accordingly, IT IS HEREBY ORDERED that the United States' Motion to

"cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right." The opinion then goes on to say what the U.S. cites: "... [T]he interference of the Courts with the performance of the ordinary duties of the executive

Set Aside Sanding Order DWM–28 (dkt. # 44) is DENIED.

IT IS FURTHER ORDERED that within ten (10) days of this Order, the United States Attorney for the District of Montana shall comply with Standing Order DWM–28 for each Judgment of Conviction entered since May 1, 2003.

The Clerk is directed to notify the parties and the Ninth Circuit Court of Appeals of the entry of this Order and Opinion.

departments of the government, would be productive of nothing but mischief." *Larson* is about the Court's power, or lack thereof, to enter judgments that force the government as a party to a suit to do something. That is not what is at issue here.